**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | |
|---|---|
| PENNSYLVANIA NATIONAL MUTUAL ) <br> INSURANCE COMPANY, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ELY WALL & CEILINGS, INC.; DRAKE ) <br> DEVELOPMENT CORPORATION, IV; ) <br> JENKINS HANCOCK & SIDES ) <br> ARCHITECTURE INTERIORS ) <br> ENGINEERING, INC.; R.J. GRIFFIN & ) <br> COMPANY D/B/A SEBRELL GRIFFIN ) <br> GENERAL CONTRACTORS; RJG ) <br> CONSTRUCTION COMPANY F/K/A ) <br> R. J. GRIFFIN & COMPANY ) <br> FORMERLY DOING BUSINESS AS ) <br> SEBRELL/GRIFFIN & COMPANY ) <br> GENERAL CONTRACTORS; W.R. ) <br> BONSAL COMPANY; OLDCASTLE ) <br> RETAIL, INC. f/k/a BONSAL ) <br> AMERICAN, INC.; BEACH CLUB AT ) <br> WINDY HILL HOMEOWNERS ) <br> ASSOCIATION, INC.; BEACH CLUB II ) <br> HOMEOWNERS ASSOCIATION, INC.; ) <br> BEACH CLUB III AT WINDY HILL ) <br> HOMEOWNERS ASSOCIATION, INC.; ) <br> THE OCEAN BAY CLUB, HPR; ) <br> HAROLD and LUCIE E. LUMLEY, ) <br> individually and representing as a class all ) <br> owners of the condominium units in the ) <br> BEACH CLUB I HOMEOWNERS ) <br> ASSOCIATION, INC.; TERRENCE and ) <br> JOANNE REILLY, individually and ) <br> representing as a class all owners of the ) <br> condominium units in the BEACH CLUB II ) <br> HOMEOWNERS ASSOCIATION, INC.; ) <br> EDWIN C. and SHIRLEY T. EADS, ) <br> individually and representing as a class all ) <br> owners of the condominium units in the ) <br> BEACH CLUB III HOMEOWNERS ) | CIVIL ACTION NO. 4:04-1576-RBH <br><br><br><br><br><br><br><br><br><br><br> **O R D E R** |

```
ASSOCIATION, INC.; and KENNETH        )
FERGUSON, JAN FERGUSON,               )
THOMAS FULMER, LORETTA                )
FULMER, ALAN LAYNE, NAOMI             )
LAYNE, JAMES SHERRER, SHIRLEY         )
SHERRER, BERNARD WILLIAMS,            )
BERNADETTE WILLIAMS, individually     )
and on behalf of all others similarly situated,)
                                      )
              Defendants.             )
_____ )
```

This matter is before the court on Defendants' Ocean Bay Club HPR, Kenneth Ferguson, Jan Ferguson, Thomas Fulmer, Loretta Fulmer, Alan Layne, Naomi Layne, James Sherrer, Shirley Sherrer, Bernard Williams, and Bernadette Williams ("Ocean Bay defendants") motion to dismiss. For the reasons stated below, the court grants the motion to dismiss.

## I. Factual and Procedural Background

**A.     Factual History**

Pennsylvania National Mutual Insurance Company ("Penn National") is an insurance company incorporated under the laws of Pennsylvania with its principal place of business in Pennsylvania. Penn National filed this action on May 18, 2004, seeking a declaration pursuant to 28 U.S.C. § 2201 and Fed.R.Civ.P. 57 that it owes no duty to defend or indemnify under six commercial general liability ("CGL") insurance policies issued to Ely Wall & Ceilings, Inc. ("Ely Wall"). Particularly, Penn National states that the liability on the part of its insured, Ely Wall, as alleged by various Plaintiffs in numerous pending civil actions in the South Carolina state courts arising out of alleged defective workmanship by Ely Wall, is not within the coverage of the Penn National policies.

**B.     Relevant Procedural History**

On August 19, 2004, the Ocean Bay defendants moved to dismiss pursuant to Fed.R.Civ.P. 12,

as well as the discretionary jurisdiction of the court regarding this action, and the abstention doctrine outlined in Brillhart v. Excess Ins. Co., 316 U.S. 491 (1942).[1] The Ocean Bay defendants are homeowners in a condominium project who have brought suit against Ely Wall in state court. On November 14, 2005, Defendant Ely Wall filed a memorandum in support of the Ocean Bay defendants' motion to dismiss which essentially states that it joins in and supports the motion to dismiss.[2] Thus, those who would benefit most by a finding of coverage under the policies are asking this court to abstain. The remaining defendants have taken no position in the matter. The court allowed the parties to argue their respective positions on the motion at a hearing on November 4, 2004.[3]

## II. Discussion of the Law

The plaintiff asserts, and no defendant disputes, that the parties are citizens of different states and the matter in controversy exceeds $75,000. Thus, this court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. However, even though this court possesses jurisdiction, pursuant to the Federal Declaratory Judgment Act ("the Act"), 28 U.S.C. § 2201, and Fed.R.Civ.P. 57, federal courts have discretion to decline to exercise jurisdiction over a declaratory judgment action. Specifically, the Act provides in part:

---

[1] Although the Ocean Bay defendants brought this motion in part, under Rule 12, the appropriate analysis is drawn from the Declaratory Judgment Act, 28 U.S.C. § 2201, which is where the parties correctly directed their arguments.

[2] On December 1, 2005, North American Specialty Insurance Company ("NASI") filed a motion to intervene. NASI issued payment and performance bonds to Ely Wall for several of the projects involved in the underlying state court litigation. Subject to this court allowing NASI to intervene, NASI also filed a motion to dismiss which essentially outlines the same arguments for dismissal as the Ocean Bay defendants' motion to dismiss.

[3] As discussed in more detail below, at the request of the parties this court entered an Order staying this case until the South Carolina Supreme Court issued a refiled opinion in a case which affected matters at issue in the case at bar.

3

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201 (emphasis added).

The United States Supreme Court has "repeatedly characterized the Declaratory Judgment Act as 'an enabling Act, which confers a *discretion* on the courts rather than an absolute right upon the litigant.'" Wilton v. Seven Falls Co., 515 U.S. 277, 287 (1995) (emphasis added) (quoting Public Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 241 (1952)).  This discretion is not boundless however, as a district court "may not refuse to entertain a declaratory judgment action out of 'whim or personal disinclination, but may do so only for good reason.'" Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 375 (4th Cir. 1994) (citations omitted).[4]

In Aetna Casualty & Surety Co. v. Quarles, the Fourth Circuit found that 28 U.S.C. § 2201 gives district courts the discretionary authority to grant relief where it "(1) will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) will terminate and afford relief from uncertainty, insecurity, and controversy giving rise to the proceeding."  92 F.2d 321, 325 (4th Cir. 1937); see also Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co., 139 F.3d 419, 422 (4th Cir. 1998).  After considering the Quarles factors enumerated above, many courts have used federal declaratory judgment actions "to resolve disputes over liability insurance coverage, even in advance of a judgment against the insured on the underlying claim for which the coverage is sought."  Nautilus, 15 F.3d at 375 (citing Stout v. Grain Dealers Mut. Ins. Co. v. Daniel, 92 F.2d 838 (4th Cir. 1937)).

---

[4] Although Wilton overruled portions of Nautilus dealing with appellate standards of review, the factors articulated by Nautilus with regard to whether or not a court should exercise discretion in a declaratory relief action remain useful.  See Penn-America Ins. Co. v. Coffey, 368 F.3d 409, 412 (4th Cir. 2004).

4

In the case before this court, Penn National is seeking a declaration that it owes no duty to defend or indemnify under six CGL insurance policies issued to Ely Wall. All parties acknowledge that Penn National is currently defending Ely Wall in numerous state court cases. As such, this court finds that by defining Penn National's duties to Ely Wall, there is no question that this declaratory judgment action will serve a useful purpose and that it would terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.

Yet, subsequent to the decision in Quarles, the Fourth Circuit has recognized that:

> when an insurer comes to federal court seeking a declaratory judgment on coverage issues while the underlying litigation against its insured is pending in the state courts, considerations of federalism, efficiency, and comity should also figure into the discretionary balance, and may, in certain circumstances, require the federal court to refuse to entertain the action, even when the declaratory relief sought would serve a useful purpose.

Nautilus, 15 F.3d at 376 (citing Mitcheson v. Harris, 955 F.2d 235, 237-41 (4th Cir. 1992)). However, the court in Nautilus stated that its decision in Mitcheson "did not announce a *per se* rule forbidding a federal court to entertain a declaratory action brought to resolve issues of insurance coverage during the pendency of related litigation against the insured in the state courts." Id. The court found that "[s]uch a rule would, of course, be flatly inconsistent with controlling Supreme Court precedent approving the use of declaratory judgment actions by insurers in precisely that situation." Id.

Instead, Mitcheson only found that when a federal court is presented with an insurer's request for declaratory relief on coverage issues while there is pending related state court litigation, its discretion must not only be guided by the factors outlined in Quarles, but also by considerations of federalism, efficiency, and comity. Nautilus, 15 F.3d at 376. These additional concerns require a court to consider:

> (1) the strength of the state's interest in having the issues raised in the federal declaratory judgment action decided in the state courts; (2) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; (3) whether permitting the federal action to go forward would result in unnecessary "entanglement" between the federal and state courts systems, because of the presence of "overlapping issues of fact or law;" and (4) whether the declaratory judgment action is being used merely as a device for "procedural fencing"-- that is, "to provide another forum in a race for res judicata" or "to achieve a federal hearing in a case otherwise not removable."

Id. at 377 (internal citations omitted). This court will consider each factor in turn.

**A.    South Carolina's interest in having the issues raised here decided in the state courts.**

Absent indication to the contrary, South Carolina substantive law would govern the interpretation of the insurance policies at issue in this declaratory judgment action because jurisdiction is based on diversity of citizenship. See Erie R.R. v. Tompkins, 304 U.S. 64 (1938). Thus, this court must first consider South Carolina's interests in having the coverage issues raised in this case decided in the South Carolina state courts.[5] In the opinion of this court, this is perhaps the most important consideration in this action. The Fourth Circuit, in addressing this consideration, has recognized that a state court will have a rather strong interest in resolving an issue of state law that is particularly "close," "difficult," or "problematic." See Nautilus, 15 F.3d at 378.

The Ocean Bay defendants state in their initial memorandum in support of the motion to dismiss that the State of South Carolina has a strong interest in having the issues involved in this case decided in state courts. They state that there exists an important interest in having the most authoritative voice speak on the meaning of the applicable law and that voice belongs to state courts when state law controls. The Ocean Bay defendants note that if "the instant case raises any novel issues of law, then

---

[5] In Beach Cove Associates v. U.S. Fire Ins. Co., 903 F. Supp. 959, 962 (D.S.C. 1995) (citing SEC v. National Securities, Inc., 393 U.S. 453, 459 (1969)), the court noted that "[s]tate courts have a particular strong interest in deciding questions of insurance law."

6

this Court may have to certify such issues to the Supreme Court of South Carolina." (Defendants' Memo in Support of Motion to Dismiss, Doc. # 10, p. 6.) The Ocean Bay defendants state that "[w]ere this Court to determine novel issues of South Carolina law, then there would be an 'entanglement' between the federal and state court systems as well as 'overlapping of issues.'" (Defendants' Memo in Support of Motion to Dismiss, Doc. # 10, p. 6.)

In the response in opposition to the motion to dismiss, the plaintiff argues that there is no compelling need for a South Carolina state court to address the coverage issues raised in this declaratory action. Recognizing that dismissal of this action may be warranted if it presents issues which are "difficult" or "unsettled," the plaintiff argues that South Carolina law is clearly settled with regard to the issue presented in this action, that being whether faulty construction or workmanship constitutes an "occurrence" under a CGL policy. (Plaintiff's Memo in Opposition to the Motion to Dismiss, Doc.# 15, p. 4-5.) The plaintiff cites to the decision of L.J, Inc. v. Bituminous Fire and Marine Ins. Co., 2004 WL 1775571 (S.C. Aug. 9, 2004),[6] and states that "[t]his month the South Carolina Supreme Court re-affirmed South Carolina law on coverage for faulty construction, and the proper interpretation of the term 'occurrence' as it is used in a CGL policy." The plaintiff states that in L.J, Inc. the "Supreme Court found that faulty workmanship by the insured did not fall within the policy definition of 'occurrence.'" Thus, the plaintiff argues that "South Carolina law is clearly settled, then, on the question of whether faulty construction [or workmanship] constitutes an 'occurrence' under a CGL policy." (Plaintiff's Memo in Opposition to the Motion to Dismiss, Doc.# 15, p. 5.) The plaintiff again asserts that the state law issues presented in this case "are not novel or uncertain; rather, resolution of

---

[6] As discussed in more detail below, the South Carolina Supreme Court issued a refiled opinion and withdrew its 2004 opinion.

this case only requires 'the routine application of settled principals of law to particular disputed facts.'" (Plaintiff's Memo in Opposition to the Motion to Dismiss, Doc.# 15, p 5.)

The Ocean Bay defendants filed a reply memorandum in support of the motion to dismiss in which they argue, contrary to the plaintiff's argument, that the issues of state law presented in this action are novel and are not settled. At the time the Ocean Bay defendants filed their reply memorandum they also noted that there was a petition for rehearing of the L.J, Inc. case before the South Carolina Supreme Court. (Defendants' Reply Memo in Support of Motion to Dismiss, Doc. # 27, p. 2-3.)

On February 3, 2005, the South Carolina Supreme Court granted the above mentioned petition for rehearing. On February 11, 2005, this court entered an Order staying this case, at the request and with the consent of the parties, pending a decision on rehearing by the South Carolina Supreme Court. After rehearing the L-J, Inc. case, the South Carolina Supreme Court refiled its opinion on September 26, 2005. See L-J, Inc. v. Bituminous Fire & Marine Ins. Co., 621 S.E.2d 33 (S.C. 2005). In the refiled opinion, the South Carolina Supreme Court confirmed its prior holding that under the specific facts of that case, faulty workmanship was not an "occurrence" under a CGL insurance policy. A petition for rehearing was filed once again in the L-J, Inc. case and such was denied on November 10, 2005. This court allowed the parties an opportunity to file supplemental memoranda in light of the South Carolina Supreme Court's refiled opinion.

The Ocean Bay defendants field a supplemental memorandum in support of their motion to dismiss on November 14, 2005. Although, the defendants appear to acknowledge that the South Carolina Supreme Court confirmed its prior opinion, they state the matter is still not final as there has

8

been another petition for rehearing filed in the L-J, Inc. case.[7] The Ocean Bay defendants state that this demonstrates an ongoing state interest in these novel issues of law and such is why it would be improper for a federal court to decide the issues presented in this case.

On November 14, 2005, Defendant Ely Wall filed a memorandum in support of the Ocean Bay defendants' motion to dismiss. In the memorandum, Ely Wall states that it joins in and supports the motion to dismiss. Defendant Ely Wall points out that although the South Carolina Supreme Court decided under the facts of the L-J, Inc. case that there was no occurrence under the CGL policy, the court goes on to praise a New Hampshire Supreme Court case where coverage was found under different facts. Defendant Ely Wall argues that the facts of the underlying state court cases are more similar to the New Hampshire case than those of the L-J, Inc. case. Thus, the defendant argues that South Carolina has a strong interest in clarifying and defining its own law as to policy coverage in connection with the suits pending against Ely Wall in the state courts.

The plaintiff also filed a supplemental memorandum on November 14, 2005. The plaintiff essentially states that, assuming for the sake of argument, there was ever any merit to the defendants' abstention argument based upon the grant of rehearing in the L-J, Inc. case, that argument no longer exists because this case was stayed pending the South Carolina Supreme Court's decision on rehearing and the South Carolina Supreme Court has now issued its post-rehearing decision. Therefore, the plaintiff states that there is no meritorious basis for any claim that a state court forum must decide the legal issues presented in this case rather than a federal court.

The point of this rather long-winded discussion is to show that this court is very aware of the

---

[7] However, the court notes, as mentioned above, the petition for rehearing which the defendants reference was denied by the South Carolina Supreme Court on November 10, 2005.

notion that whenever an issue of state law is novel, close, difficult, or problematic, "[t]here exists an interest in having the most authoritative voice speak on the meaning of applicable law . . . ." Mitcheson, 955 F.2d at 237. This court has recognized that principle by staying this case until the most authoritative voice on an issue of state law in this state, the South Carolina Supreme Court, had an opportunity to rehear matters affecting issues presented in this declaratory action. As noted above, the South Carolina Supreme Court has spoken, and it has confirmed its prior holding.

However, after reviewing the refiled L-J, Inc. opinion, this court finds that because the facts of this case are distinguishable from those in the L-J, Inc. case, the decision in L-J, Inc. may not answer several questions presented in the present case. Thus, contrary to the plaintiff's position that the L-J, Inc. opinion establishes that there is simply no coverage under CGL policies for faulty workmanship or construction, this court finds that the L-J, Inc. opinion does not necessarily reflect "settled" law as to the issue of "occurrence" and coverage under the CGL polices at issue in this case. For instance, the L-J, Inc. case involved alligator cracking to the asphalt of a road and the South Carolina Supreme Court held that, under the specific facts presented in that case, faulty construction was not an "occurrence" under a CGL insurance policy. Specifically, the L-J, Inc. court stated that "[w]e find these negligent acts constitute faulty workmanship, *which damaged the roadway system only*. And because faulty workmanship is not something that is typically caused by an accident or by exposure to the same general harmful conditions, we hold that the damage in this case did not constitute an occurrence." L-J, Inc., 621 S.E.2d at 36 (emphasis added).

However, the South Carolina Supreme Court also noted in the opinion that it found the New Hampshire Supreme Court's analysis in High Country Assocs. v. New Hampshire Ins. Co., 648 A.2d 474 (1994), helpful in ultimately reaching its decision. The High Country Assocs. court found that a

10

CGL insurance policy *provided* coverage for property damage caused by continuous exposure to moisture through leaky walls when the complaint alleged negligent construction that resulted in property damage and not simply negligent construction damaging only the work product itself.  Id. at 477.

The South Carolina Supreme Court appears to attempt to distinguish the facts of the L-J, Inc. case from those of the High Country Assocs. case when it stated that "[i]n the present case, the complaint did not allege property damage beyond the improper performance of the task itself."  L-J, Inc., 621 S.E.2d at 36.  In fact, the court's opinion is replete with references which note that the property damage alleged in the complaint was to the work product alone.

In the case at bar, the underlying state court complaints which are the subject of this declaratory judgment action are not part of the record before this court, however, the court has been able to discern from the declaratory judgment complaint and the memoranda that the multiple state court cases involve, among other things, claims for damages to condominium buildings allegedly as a result of moisture intruding through the skin of the exterior stucco cladding of the buildings, which were installed by Ely Wall.[8]  Therefore, it appears to this court that the facts of the case at bar may be much more similar to the facts of the High Country Assocs. case, rather than those of the L-J, Inc. case.  Thus, were this court

---

[8] Specifically, the declaratory judgment complaint states:

> Subsequent to the completion of each of the foregoing projects, the homeowner's associations for the respective condominium communities and individual residents of the buildings reported water infiltration.  It has been alleged that the subject water infiltration is the result of improper installation by Ely Wall, improper work by Griffin/Christopher, improper design and specification by the architect/engineers, failure of the Bonsal exterior finish system, and failure of the windows installed in the various buildings.

Declaratory Judgment Complaint, Doc. # 1, p. 10, para. 45.  See also Defendant Ely Wall's Memo in Support of Motion to Dismiss, Doc. # 50, p.3.

to entertain this declaratory judgment action it may have to make a determination of whether the South Carolina Supreme Court would in fact adopt, or by implication has already adopted, the same rationale as the High Country Assocs. court, if facts similar to those in High Country Assocs. actually presented themselves. While the court in L-J, Inc. held that where the damage is to the work product itself there would be no coverage, it seems to imply through its discussion of High Country Assocs. that there may be coverage when the work of the insured contractor causes damage to something other than the insured's own work product. As the L-J, Inc. court noted, "we hold that the damage *in this case* did not constitute an occurrence." 621 S.E.2d at 36 (emphasis added). Then the court stated in footnote 4 that "[t]he CGL policy *may*, however, provide coverage in cases where faulty workmanship causes a third party bodily injury *or* damage to other property . . . ." Id. (emphasis added).

It appears to this court that the South Carolina Supreme Court praises the High Country Assocs. court's analysis in the L-J, Inc. case. However, the argument may be made that this portion of the opinion is simply dictum and that the opinion in the L-J, Inc. case establishes a bright line rule by the South Carolina Supreme Court that faulty construction is not an occurrence under a CGL insurance policy. Significantly, the plaintiff in the case at bar appears to take that position as it has stated in its briefs several times that the South Carolina Supreme Court has clearly decided in the L-J, Inc. case that without exception, faulty workmanship is not an occurrence under a CGL policy.[9] See Plaintiff's Memo in Opposition to the Motion to Dismiss, Doc.# 15, p. 5 & Plaintiff's Supp. Memo in Opposition to the Motion to Dismiss, Doc.# 47, p. 2.

---

[9] The plaintiff argues that this legal position is settled law in South Carolina. However, this position must not be too settled as another member of this court, The Honorable Patrick Michael Duffy, held otherwise in Okatie Hotel Group, LLC v. Amerisure Insurance Company, 2006 WL 91577 (D.S.C.). However, unlike the case before the undersigned, the court in Okatie was not presented with a motion to dismiss based on abstention grounds.

As reflected above, while some may argue that the L-J, Inc. case establishes a clear rule of law of no coverage under a CGL policy where there is faulty workmanship, others may argue that the L-J, Inc. case establishes that each case is fact specific and driven by factual determinations. Thus, this court is of the opinion that because the issues of state law presented in this case are so close, problematic, and difficult, South Carolina has an exceptional, counter-veiling interest in litigating the issues in its own courts. Likewise, for the above mentioned reasons, the court finds the plaintiff's statement to this court that this case involves only the routine application of settled principals of law to be troublesome and somewhat misleading.

This court also takes note that the entire construction and insurance Bar of the State of South Carolina were in turmoil after the initial decision of the South Carolina Supreme Court in the L-J, Inc. case. "As soon as the supreme court released this opinion, construction lawyers all over South Carolina began receiving calls from insurance companies as these companies began declining settlement offers, cancelling scheduled arbitrations, and refusing to provide coverage under existing policies." Anne Marie McNeil, *L-J, Inc. v. Bituminous Fire & Marine Insurance Co.: In Determining Coverage Under Commercial General Liability Policies, Should Policy Language or Public Policy Control?* 56 S.C. L. Rev. 791, 801 (2005).

This court also finds that the importance of the L-J, Inc. decision can be best appreciated by looking at the multiple Amicus Curiae involved in the rehearing. They include the South Carolina Community Association Institute, CCM, Benchmark, American Subcontractors and Mechanical Contractors, National Association of Mutual Insurance Companies, South Carolina Trial Lawyers Association, American Insurance and Property Casualty, Independent Insurance Agents and Brokers of South Carolina, National Association of Home Builders, et al., and The Carolinas Associated General

Contractors'. The sheer number of Amicus Curiae reflects and signifies the magnitude of this insurance coverage issue in the construction litigation field.

It is also worth noting that the plaintiff repeatedly refers this court to the Fourth Circuit's reversal of the district court's decision not to exercise jurisdiction in the recent case of <u>Penn-America Ins. Co. v. Coffey</u>, 368 F.3d 409 (4th Cir. 2004). In the <u>Penn-America</u> case, the Fourth Circuit recognized that a state's interest is not particularly significant where any state law issues are "standard and unlikely to break new ground." However, the case at bar is distinguishable from the <u>Penn-America</u> case as the state law issues are anything but standard and could very likely to break new ground.

Significantly, this court also notes that the Fourth Circuit has a long history of reluctance when it comes to exercising jurisdiction over declaratory judgment actions involving the indemnification of parties to state court actions. <u>American Motorists Ins. Co. v. Commonwealth Medical Liability Ins. Co.</u>, 306 F. Supp.2d 576 (E.D. Va. 2004). The Fourth Circuit also explained in <u>Mitcheson</u> that:

> Absent a strong countervailing federal interest, the federal court should not elbow its way into this controversy to render what may be an uncertain and ephemeral interpretation of state law.

955 F.2d at 239.

The state law issues presented in this case do not appear to involve the routine application of settled principals of law to particular disputed facts. Therefore, as stated above, this court is of the opinion that South Carolina has an extremely strong interest in having these state law issues decided in state court, a forum better equipped to create South Carolina law which will be consistent with its public policy.

**B.    Whether the issues raised here can be more efficiently resolved in the court in which the state actions are pending.**

The second factor, whether the state courts can more efficiently resolve the matter, does not at first glance necessarily support dismissal of this declaratory relief action. When addressing this factor, the Fourth Circuit has urged district courts to conduct a "careful inquiry into 'the scope of the pending state court proceeding[s],' including such matters as 'whether the claims of all parties in interest [to the federal proceeding] can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, [and] whether such parties are amenable to process in that proceeding.'" Nautilus, 15 F.3d at 378-379 (citing Brillhart 316 U.S. at 495). This court finds that the issues presented in this court differ from the tort actions in state court. In the state tort actions, certain plaintiffs are seeking damages from defendant Ely Wall, and others, for alleged defective workmanship. On the other hand, in the case before this court, Penn National seeks a declaration that it owes no duty to defend or indemnify Ely Wall, its insured. Likewise, Plaintiff Penn National is not a party to the state court actions, and there is no indication whether or not it could be joined at this stage in those proceedings.

By contrast, however, the Fourth Circuit has also held that all issues of a case should be resolved in a *single court system*. See Mitcheson, 955 F.2d at 239. The court then went on to find in Nautilus that the fact that issues involved in the federal court action could be brought in a state court action is not *alone* sufficient to justify dismissal of the federal court action. 15 F.3d at 379. The Nautilus court held that only if the state court action is more effective *or* efficient should the federal court decline to entertain the action. Id. As such, this court finds that in the case at bar, as in Mitcheson, a state court action clearly would be more effective due to the unsettled state law issues involved.[10]

---

[10] Additionally, the court finds that this factor overlaps to some extent with the "unnecessary entanglement" factor discussed below. It appears to this court that the final L-J, Inc. decision was

Furthermore, both the state and federal court actions stem from the same set of operative facts. As the Fourth Circuit held in Mitcheson:

> It hardly husbands scarce judicial resources to allow separate suits stemming from the same overall controversy and involving overlapping issues to proceed simultaneously on parallel tracks. The inefficiencies that could result are not hard to imagine. For example, if a federal court were to render a declaration that the insurer had no duty to defend, the ongoing state litigation could be delayed considerably due to time consuming substitution of counsel. Similarly, a federal declaration that an insurer had no duty to indemnify could be rendered totally unnecessary by a subsequent state verdict for the insured in the underlying state action. See Indemnity Ins. Co. v. Schriefer, 142 F.2d 851, 853 (4 Cir. 1944) (approving dismissal of declaratory action because duty to indemnify could be decided as well after the state court litigation). Such potential problems reinforce the inherent appeal of having all litigation stemming from a single controversy resolved in a single court system. See generally Gibbs, 383 U.S. at 724-25, While inefficiencies can of course occur within a single court system, the prospects for coordinated management and alleviation of abrasion are greater when the litigation is handled under one jurisdictional roof.

955 F.2d at 240.

Based upon the court's careful consideration of all relevant factors in this case, the court also concludes that "it [would be] more efficient to resolve all litigation stemming from a single controversy in a single court system." American Motorists, 306 F. Supp.2d at 582 (citing Mitcheson, 955 F.2d at 239).

**C.    Whether permitting this action to go forward would result in unnecessary "entanglement" between the federal and state courts.**

As to the entanglement of the federal and state court systems, this court's concern is with whether the coverage issue decided here would have a preclusive effect in the state court actions.

---

factually drive. As such, it must be noted that there are numerous underlying state court actions which presumably may involve many factual determinations. For example, to what extent, if any, there was damage to areas other than the work product and the cause of any water entry. In the event this court were possibly forced to make factual determinations, as well as a state court, then the efficiency of this possible duplication of effort is called into question.

16

Without question, Penn National brought this declaratory judgment action precisely because this court's rulings on a coverage issue would be binding in the state court tort actions. Thus, there may be a threat of unnecessary entanglement between federal and state courts.[11]

Furthermore, the factual questions presented in the state court actions may be substantially intertwined with a resolution of the insurance coverage questions presented in this federal declaratory judgment action. Thus, while "a federal district court should normally entertain a declaratory judgment action within its jurisdiction," it is not prudent to do so when factual questions require resolution before legal rights and obligations under an insurance contract can be decided. Nautilus, 15 F.3d at 375.

**D.    Whether the federal declaratory relief action is being used merely as a device for procedural fencing.**

The court finds the defendants' arguments that Penn National is using this action as a procedural fencing device lacks merit. The court has no reason to believe that Penn National is engaged in procedural fencing.

In Nautilus, the found:

> Though the parties might have filed this declaratory judgment action in state court, they chose to proceed in federal court instead, as they were authorized to do by 28 U.S.C. §§ 1332 and 2201. Having done so, they are entitled to have the federal court issue the declaration of rights and duties that they seek, *unless* the considerations of federalism, efficiency, and comity outlined in Mitcheson are strong enough to overcome the federal policy in favor of awarding declaratory relief where it will "serve a useful purpose in clarifying and settling the legal relations in issue" and "afford relief from the uncertainty, insecurity, and controversy giving rise to the controversy."

---

[11] At the hearing on the present motion the defendants pointed out that there are eleven (11) underlying state court actions. Further, the defendants argued that this court would have to make numerous factual findings in deciding this declaratory judgment action. The court notes that if it had to make factual findings as the defendants suggest, such findings could possibly have a preclusive effect in the numerous state court actions. Thus, resulting in possible entanglement between federal and state courts regarding factual issues.

15 F.3d at 380 (quoting Quarles, 92 F.2d at 324).

### III.  Conclusion

After applying the above listed factors to the case at bar, this court finds that federalism, efficiency, and comity weigh against the exercise of federal jurisdiction over Penn National's action for declaratory relief regarding its duty to defend or indemnify under the CGL insurance policies issued to Ely Wall.  As stated above, the court finds that South Carolina state courts should resolve the state law issues presented in this case since they are so unsettled, close, problematic, and difficult.  In the opinion of the court, this is not a case such as Nautilus or Penn-America, where a federal court is being asked to simply apply clearly settled state law.  Instead, the concerns of federalism and comity outlined in Mitcheson outweigh the policy favoring awarding declaratory relief in federal court.  This court regrets that this case has been pending on its docket for over a year and all parties have expended considerable effort and expense.  Yet, at the same time, the parties requested the court stay this case pending a decision on rehearing in the L.J. Inc. case by the South Carolina Supreme Court.  Likewise, the court notes that the Fourth Circuit found in Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 257 (4th Cir. 1996), that "consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close."

This court has come to the thoughtful yet reluctant conclusion, and not on a whim or personal disinclination, that the questionable extent and scope of the final L.J. Inc. decision, coupled with a concern for federalism, necessitates bowing to a dismissal of this matter and exercising the court's

discretion to decline jurisdiction over this declaratory judgment action.[12]

Therefore, for the reasons states above, it is hereby **ORDERED** that the Ocean Bay defendants' motion to dismiss (Doc. # 9) is **GRANTED**.  Furthermore, NASI's motion to intervene (Doc. # 52) and motion to dismiss (Doc.# 53) are found to be **MOOT**.

**IT IS SO ORDERED.**

               s/ R. Bryan Harwell
               R. Bryan Harwell
               United States District Judge

March 6, 2006
Florence, South Carolina

---

[12] The court notes that another member of this court, The Honorable Terry L. Wooten, when faced with somewhat similar issues involving some of the same parties in the underlying state court litigation, came to a similar conclusion.  See Shelby Insurance Co. v. Boad, Inc. D/B/A Charlotte Waterproofing, Civil Action No. 4:04-22502-TLW.